UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHARON DENISE CAMERON, | ) |
| Plaintiff | ) ) ) |
| vs. | ) Case No. 2:15-cv-00204-HGD |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant | ) ) |

**MEMORANDUM OPINION**

Plaintiff, Sharon Denise Cameron, protectively filed applications for Supplemental Security Income (SSI), a period of disability, and disability benefits (DIB) on February 17, 2012, alleging that she became disabled on November 1, 2010. The Agency denied her applications. Plaintiff requested a hearing before an administrative law judge (ALJ). A hearing was held in September 2013. (Tr. 31-81). The ALJ found plaintiff to be not disabled by a decision rendered on September 27, 2013. (Tr. 11-23). The Appeals Counsel denied plaintiff's request for review on December 4, 2014. Plaintiff appealed and his claim is now ripe for review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

**I.     ALJ Decision**

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC

to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

Following this five-step procedure, the ALJ found that plaintiff has the following severe impairments: paranoid schizophrenia and bipolar disorder. However, the ALJ found that these conditions did not preclude all work by plaintiff. (Tr. 16). The ALJ further found that plaintiff's condition did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (Tr. 17).

The ALJ determined that plaintiff had the RFC to perform a full range of all work at all exertional levels but with the following non-exertional limitations: the plaintiff is

able to perform simple routine, and repetitive tasks in a work environment free from fast-paced production requirements; involving only simple work-related decisions and routine workplace changes; with no interaction with the public, and only occasional interaction with co-workers; and no tandem tasks. (Tr. 18).

The plaintiff was 25 years old with no past relevant work experience at the time of the ALJ's decision. (Tr. 21-22). Based on the testimony of a vocational expert (VE), the ALJ found that someone with plaintiff's limitations would be able to perform the requirements of the occupations of cleaner, food preparation worker, and kitchen worker, all of which have available jobs in the local and national economy. (Tr. 22).

## II.    Plaintiff's Argument for Reversal

Plaintiff asserts that the Commissioner's decision should be reversed because the ALJ failed to consider key portions of the opinion of Dr. Robert Estock, a reviewing physician. (Doc. 11, Plaintiff's Brief, at 3). Dr. Estock opined that plaintiff could perform unskilled work involving simple tasks, would miss one to two days per month, and could benefit from a flexible schedule. (Tr. 21). The ALJ further stated that, although this opinion was considered, he believed that the record as a whole suggests greater difficulties with social interaction due to plaintiff's mental health symptoms. (Tr. 21). Plaintiff asserts that the ALJ's decision does not address the absenteeism issue as it relates to plaintiff's case, made significant by the fact that the VE testified that an

employer would tolerate no more than one to one and a half days of unscheduled absences per month. (Tr. 77; Doc. 11, Plaintiff's Brief, at 4-5).

### III. Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates

against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV. Evidence

In his decision, the ALJ notes that plaintiff claims that she became unable to work in November 2010 because her paranoia became worse and she thought someone was trying to kill her. She was hospitalized in late November 2010 because she would not leave her house. She acknowledged that she was not taking her medication prior to her hospitalization. She further stated that, when she took her medication, it helped a lot. She was discharged with medications, but did not immediately follow up. (Tr. 19).

Plaintiff did begin to be seen on a monthly basis by Dr. Rachel Julian, M.D., a psychiatrist. Dr. Julian adjusted her medication due to side effects. Plaintiff reports that her current medication does not cause side effects. However, she asserts that she continues to see things on the wall, hear voices daily, and have panic attacks three to four times per week despite medication. (*Id.*)

Plaintiff testified that she lives with her mother in an apartment, that her mother performs all the household chores, and that she provides no assistance. She testified that the day before her hearing before the ALJ, she got up, showered, ate breakfast, read a magazine, and went outside and down the street to get the mail. She stated that she

generally spends her days watching television and going to the store with the help of her mother. (*Id.*).

The ALJ found that there is evidence that plaintiff suffers from medically determinable impairments that could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (*Id.*).

According to the ALJ, the evidence as a whole shows that plaintiff is capable of performing unskilled work with limited social interaction, as set forth in the RFC. He noted that plaintiff was hospitalized in November 2010 for approximately one week with command hallucinations. She was not taking her prescribed medication at that time. However, her symptoms improved significantly with medication. (*Id.*).

She received no further mental health treatment until April 2011, when she began seeing Dr. Julian. She reported symptoms of auditory hallucinations and depression had increased without proper medication. Her symptoms improved with medication. Treatment notes in May 2011 show that plaintiff was going to the store and doing housework, despite her mental health symptoms. In August 2011, she was spending time with her extended family. Contrary to her hearing testimony, plaintiff reported in November 2011 that she was helping her mom around the house. She also stated that her auditory hallucinations had decreased. In January 2012, she reported that she wanted to

find employment. Dr. Julian offered to increase her medication due to reports of incoherent mumbling; however, plaintiff declined. In April 2012, treatment notes indicate that plaintiff's goal was to be working within the next year. (Tr. 19-20).

Treatment notes from July 2012 reflect that plaintiff's hallucinations were better. September 2012 treatment notes indicate that she had stopped taking her medications and was experiencing paranoid thoughts and auditory hallucinations. After restarting medications, her condition improved. In December 2012, plaintiff reported that her medications were working well. She reported the same in March 2013. In April 2013, Dr. Julian noted only mild to moderate symptoms. However, plaintiff reported that she was scared to go out of her house. In May 2013, Dr. Julian noted mild to moderate symptoms. Dr. Julian noted mildly decreased memory and concentration, mild energy problems and situational anxiety, and moderate problems with delusions and hallucinations. Plaintiff reported that she was happy with her current medication. In August 2013, Dr. Julian noted the same mild to moderate symptoms and that plaintiff desired no medication changes. (Tr. 20).

According to the ALJ, in all, the treatment records show that plaintiff's mental health symptoms cause only mild to moderate functional limitations when plaintiff is compliant with medication. (*Id.*). The ALJ noted that, despite this evidence in the medical record, Dr. Julian provided medical source statements in May and September

2013. In these statements, she opines that plaintiff's mental health symptoms caused mostly marked limitations in functioning, despite treatment notes suggesting, at most, moderate functional limitations in 2013, as set out above. Accordingly, the ALJ gave little weight to these statements because they contradicted her treatment notes. In addition, there is also evidence in the record of malingering, as set out below. (*Id.*).

The ALJ also referenced the consultative examination of Dr. Dan Lowery, Ph.D., who examined plaintiff in July 2011. Dr. Lowery suspected malingering and noted that the information provided by plaintiff was unreliable. He suspected malingering due to her poor effort during the mental status examination, resulting in inconsistent responses. For example, she was able to perform some simple arithmetic problems, while struggling with others. She also mis-spelled the word "world." The ALJ also made note of the fact that plaintiff reported to Dr. Lowery that she prepared simple meals and did housework as part of her daily activities although she testified that her mother performed all household tasks including meal preparation. The ALJ gave this report significant weight in assessing plaintiff's credibility. (*Id.*).

Dr. Sylvia Colon, M.D., examined plaintiff in July 2012. Dr. Colon noted that plaintiff was a poor historian, with difficulty recalling dates and events of her illness. Contrary to her testimony, plaintiff again reported daily activities including household chores, laundry, washing dishes, simple cooking, grocery shopping, visiting with

neighbors, taking walks, and going to the mall. Dr. Colon noted that plaintiff may have been exaggerating her responses to calculations. Contrary to her examination by Dr. Lowery, plaintiff was able to correctly spell the word "world" forward and backwards during her evaluation by Dr. Colon. Plaintiff was able to do three-step commands, but was unable to give responses to abstract thinking questioning. Dr. Colon could not give a functional assessment, but gave plaintiff a poor prognosis based on her history of non-compliance with medication. The ALJ gave great weight to Dr. Colon's report in assessing plaintiff's credibility. (Tr. 21).

The ALJ found that the consultative reports lessened the credibility of plaintiff's allegations. She gave poor effort, exaggerated responses, and inconsistent responses during the examinations. Further, her reported daily activities contradicted her hearing testimony wherein she testified that she performs no household activities and goes shopping only with family. (*Id.*).

In July 2011, Steven Dobbs, Ph.D., the state agency consultant, concluded that there was insufficient evidence to assess plaintiff's functioning due to possible malingering and poor effort. In July 2012, Dr. Robert Estock, M.D., concluded that there was insufficient evidence prior to plaintiff's last insured date to assess her functioning as it related to her Title II claim for benefits. However, the ALJ found that evidence submitted at the hearing level established the existence of plaintiff's severe impairments

prior to her date last insured. Regarding her Title XVI claim for benefits, Dr. Estock opined that plaintiff could perform unskilled work involving simple tasks, would miss one to two days of work per month, and could benefit from a flexible schedule. The ALJ stated that, although considered, the evidence of record as a whole suggests "greater difficulties with social interaction" as a result of plaintiff's mental health symptoms. (Tr. 21).

## V.     Discussion

Plaintiff contends that the ALJ should have included in his RFC finding the State agency psychological consultant's opinion that plaintiff would miss one to two days of work monthly which, based on the VE's testimony, would preclude work.

While the ALJ's RFC finding does not include a limitation that plaintiff may miss one to two days of work per month, the RFC is supported by the record as a whole. As noted above, the ALJ considered treatment records from November 2010, when plaitiff was hospitalized for hallucination after she stopped taking her medication. Her condition improved markedly when she was put back on her medication. She went five months before seeking psychiatric treatment again, supposedly due to financial difficulties. At that time, she reported that she had been off her medication for two months and was experiencing depression, paranoia and daily auditory hallucinations. Once placed back on medication, her condition again improved to the point that she reported doing

housework and going to the store. She also stated that her goal was to be working in the next year. In August 2011, her symptoms were "very manageable" and rated no more than "mild" in severity. In November 2011, her symptoms were again rated as no more than mild, and plaintiff reported that her auditory hallucinations had decreased and that she was helping with housework. Dr. Julian indicated that plaintiff's condition was improving.

Although plaintiff reported some hallucinations in January 2012, she declined Dr. Julian's offer to increase her medication dosage. Her symptoms were assessed as none-to-mild in severity. In April 2012, two months after applying for disability benefits, plaintiff again stated that she hoped to secure employment in the next year.

In July 2012, her hallucinations had decreased and her symptoms were assessed as none-to-moderate in severity. Plaintiff stopped taking her medication in September 2012, and reported hallucinations again. Dr. Julian restarted her on her medications and by December 2012, her hallucinations were rated as mild, her mood was stable, and she reported that she felt that her medication was effective. In March 2013, plaintiff again reported that she was feeling better on her medication, and Dr. Julian assessed her with only mild symptoms. In August 2013, Dr. Julian indicated that plaintiff was doing well, with a much-improved mood, no side effects, and auditory hallucinations that she was able to ignore.

Based on this evidence in the medical record, the finding by the ALJ, that plaintiff had only mild to moderate limitations when she was compliant with her medication, is well supported. Furthermore, Dr. Julian did not suggest in any of her reports that plaintiff's condition would cause her to miss any work.

Likewise, the report of consultative examiner Dan Lowery, Ph.D., indicated that plaintiff was suspected of malingering during the mental status examination and did not indicate that her condition would cause her to miss any work.

Dr. Sylvia Colon also conducted a consultative examination and similarly opined that plaintiff may have exaggerated the severity of her mental impairment. She also did not indicate that plaintiff's condition would cause her to miss one to two days monthly.

Only State agency psychological consultant Charles Estock, M.D., opined that plaintiff *may* miss one to two days a month due to psychological symptoms. The ALJ stated that he considered Dr. Estock's opinion but found the evidence of record as a whole supported greater difficulties in *social* functioning than that found by Dr. Estock. Accordingly, the ALJ limited plaintiff to occupations where she had no interaction with the public and only occasional interaction with co-workers. A greater difficulty in social functioning does not suggest that plaintiff may miss more days of work than those suggested by Dr. Estock. Furthermore, Dr. Estock only opined that plaintiff *may* miss work one to two days a month due to her psychological symptoms. The ALJ considered

plaintiff's reported daily activities (which contrast greatly with her testimony at the hearing) wherein she admitted to shopping, doing laundry, cooking simple meals, visiting neighbors, and going to the mall. Accordingly, the ALJ found that her subjective complaints were not entirely credible, and his stated RFC is an implicit rejection of the conclusion that she *would*, in fact, miss two days of work a month. The objective medical evidence and the other evidence considered by the ALJ, taken as a whole, do not indicate that plaintiff's condition caused limitations beyond those set forth in the ALJ's RFC findings. The ALJ adequately explained his reasons for making these findings. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (noting that the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so"). There is simply no evidence in the record to conclude that plaintiff would miss one to two days of work a month. Although the VE testified that employers would normally tolerate only one to one and a half missed days a month, remand is not necessary because, as noted above, Dr. Estock's opinion that plaintiff "may" miss one to two days per month was equivocal and unsupported.

      Plaintiff also complains that because the ALJ did not assign controlling weight to the opinion of Dr. Julian, he should have, but failed, to indicate the weight that he gave to Dr. Estock's opinion. Plaintiff does not challenge the ALJ's failure to give Dr.

Julian's opinion controlling weight. While the ALJ did not explicitly state the weight that he gave Dr. Estock's opinion, he discussed this opinion but stated that he found plaintiff to be more limited regarding *social* functioning. Thus, it is clear that he gave some weight to the opinion of Dr. Estock because the RFC finding is consistent with Dr. Estock's opinion that plaintiff could perform simple, routine and repetitive tasks.

Thus, even assuming that the ALJ should have explicitly stated the weight he gave to Dr. Estock's opinion, the incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). It is clear from the ALJ's decision that he properly evaluated all of the evidence in finding plaintiff not disabled. Therefore, any failure to explicitly give the weight which he attributed to Dr. Estock's opinion was harmless.

## VI.   Conclusion

Because the court has determined that the hypothetical question contained all of plaintiff's credible limitations, as supported by the record, the ALJ properly relied on the VE's testimony to determine the work plaintiff could perform. Because the ALJ's decision is supported by substantial evidence, the decision of the Commissioner is due to be AFFIRMED. A separate order will be entered.

DONE this 30th day of March, 2016.

                                              HARWELL G. DAVIS, III
                                    UNITED STATES MAGISTRATE JUDGE